**JOYCE W. LINDAUER**
**Attorneys at Law**
**8140 Walnut Hill Lane**
**Suite 301**
**Dallas, Texas 75231**
**(972) 503-4033 Telephone**
**(972) 503-4034 Facsimile**
**Attorneys for Debtor**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **SHORES PROPERTIES, L.P.,** | § | **CASE NO. 10-34904-sgj-11** |
| | § | |
| | § | |
| **Debtor.** | § | **CHAPTER 11** |

## FIRST DISCLOSURE STATEMENT
## DATED OCTOBER 10, 2010

Respectfully Submitted,

**JOYCE W. LINDAUER**
**State Bar No. 21555700**
**Attorneys at Law**
**8140 Walnut Hill Lane**
**Suite 301**
**Dallas, Texas 75231**
**(972) 239-9055 Telephone**
**(972) 239-9886 Facsimile**
**Attorneys for Debtor**

## **TABLE OF CONTENTS**

ARTICLE I - INTRODUCTION .................................................................................... 3

ARTICLE II - REPRESENTATIONS ............................................................................ 10

ARTICLE III - FINANCIAL PICTURE OF THE DEBTOR .......................................... 11

ARTICLE IV - ANALYSIS AND VALUATION OF PROPERTY ................................ 12

ARTICLE V- SUMMARY OF THE PLAN.................................................................... 12

ARTICLE VI - FEASIBILITY OF PLAN ...................................................................... 14

ARTICLE VII - RETENTION OF JURISDICTION ....................................................... 15

ARTICLE VIII - ALTERNATIVES TO DEBTOR'S PLAN .......................................... 15

ARTICLE IX - RISKS TO CREDITORS UNDER DEBTOR'S PLAN.......................... 15

ARTICLE X - TAX CONSEQUENCES TO THE DEBTOR ......................................... 15

ARTICLE XI - PENDING LITIGATION ....................................................................... 15

ARTICLE XII - SUMMARY OF SIGNIFICANT ORDERS ENTERED DURING THE CASE   15

EXHIBITS  ..................................................................................................................... 16

    Plan ....................................................................................................................... 1

**TO:  ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE
HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

## I.

## INTRODUCTION

### Identity of the Debtor

1.1.    Shores Properties, L.P. (the **"Debtor"**), filed a voluntary petition for reorganization under
Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. Section 101, et seq. (**"Code"**) on July
12, 2010 in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division
(**"Court"**), initiating the above-styled and referenced bankruptcy proceeding.  The **Debtor** is
operating its business as a **Debtor-in-Possession** pursuant to Sections 1107 and 1108 of the **Code**.
The managing partner of the Debtor is Jeff Silverstein.

### Purpose of Disclosure Statement; Source of Information

1.2.    **Debtor** submits this Disclosure Statement pursuant to Section 1125 of the **Code** to all
known **Claimants** of **Debtor** for the purpose of disclosing that information which the **Court** has
determined is material, important, and necessary for **Creditors** of, and the Partners of, **Debtor** in
order to arrive at an intelligent, reasonably informed decision in exercising the right to vote for
acceptance or rejection of the **Debtor's Plan**. This Disclosure Statement describes the operations
of the **Debtor** contemplated under the **Plan**. You are urged to study the **Plan** in full and to consult
with your counsel about the **Plan** and its impact upon your legal rights. Any accounting
information contained herein has been provided by the **Debtor** and has been prepared using the
accrual method of accounting.

### Explanation of Chapter 11

1.3    Chapter 11 is the principal reorganization chapter of the **Code**.  Pursuant to Chapter 11, a
debtor is authorized to reorganize its business for its own benefit and that of its creditors and equity
interest holders.  Formulation of a plan of reorganization is the principal purpose of a Chapter 11
reorganization case.  A plan of reorganization sets forth the means for satisfying claims against and
interests in the debtor.  After a plan of reorganization has been filed, it must be accepted by holders
of claims against, or interests in, the debtor.  Section 1125 of the **Code** requires full disclosure
before solicitation of acceptances of a plan of reorganization.   This Disclosure Statement is
presented to **Claimants** to satisfy the requirements of Section 1125 of the **Code**.

### Explanation of the Process of Confirmation

1.4.    Even if all **Classes** of **Claims** accept the plan, its confirmation may be refused by the
**Court**. Section 1129 of the **Code** sets forth the requirements for confirmation and, among other
things, requires that a plan of reorganization be in the best interests of **Claimants**.  It generally
requires that the value to be distributed to **Claimants** and **Equity Interest Holders** may not be less
than such parties would receive if the debtor were liquidated under Chapter 7 of the **Code**.

1.5.     Acceptance of the plan by the **Creditors** and **Equity Interest Holders** is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (½) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. Chapter 11 of the **Code** does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the **Court**. The plan, however, must be accepted by: (I) at least the holder of one (1) class of claims by a majority in number and two-thirds (2/3) in amount of those claims of such class actually voting; or (ii) at least the holders of one (1) class of allowed interests by two-thirds (2/3) in amount of the allowed interests of such class actually voting.

1.6.     The **Court** may confirm the plan even though less than all of the classes of claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the **Code**.

1.7.     **Confirmation** of the plan discharges the debtor from all of its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the **Code**. **Confirmation** makes the plan binding upon the debtor and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

### Voting Procedures

1.8.     **Impaired Classes**. The Class 2, 3, 4, 5, 6, 7 and 8 **Claimants** and/or **Equity Interest Holders** are impaired as defined by Section 1124 of the **Code**. The **Debtor** is seeking the acceptance of the **Plan** by **Claimants** in **Classes** 2-7 and the Equity Interest Holders in Class 8. Each holder of an **Allowed Claim** in **Classes** 2-7 may vote on the **Plan** by completing, dating and signing the ballot sent to each holder and filing the ballot as set forth below. One ballot will be sent to each **Claimant** or **Equity Interest Holder** eligible to vote on the **Plan**. For all **Classes**, the ballot must be returned to **Debtor's** attorney, Joyce Lindauer, Attorney at Law, 8140 Walnut Hill Lane, Suite 301, Dallas, TX 75231. In order to be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

1.9.     **Acceptances**. Ballots that are signed and returned but fail to indicate either an acceptance or rejection will not be counted.

### Best Interests of Creditors Test

1.10.   Section 1129(a)(7) of the **Code** requires that each impaired class of claims or interests accept the **Plan** or receive or retain under the **Plan** on account of such claim or interest, property of a value as of the **Effective Date** of the **Plan**, that is not less than the amount that such holder would so receive or retain if the **Debtor** were liquidated under Chapter 7 of the Bankruptcy **Code**. If Section 1111(b)(2) of the **Code** applies to the claims of such class, each holder of a claim of such class will receive or retain under the **Plan**, on account of such claim, property of a value, as of the **Effective Date** of the **Plan**, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. In order for the **Plan** to be confirmed, the **Court**

must determine that the **Plan** is in the best interests of the **Debtor**'s creditors. Accordingly, the proposed plan must provide the **Debtor**'s creditors with more than they would receive in a Chapter 7 liquidation. The Debtor believes that the creditors are receiving more than they would receive in a Chapter 7 liquidation because the Debtor is avoiding the costs and expenses of a Chapter 7 liquidation. Accordingly, the **Plan** satisfies the requirements of Section 1129(a)(7).

### Cramdown

1.11.    The **Court** may confirm the **Plan** even though less than all of the classes of claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the **Code**. Accordingly, Debtor, as the plan proponent, requests the **Court** to determine that the **Plan** does not discriminate unfairly, and is fair and equitable with respect to any objecting creditor. A discussion of the specific requirements for Cramdown of a Plan are set forth starting in Section 1.17 below.

### Definition of Impairment

1.12    As set forth in section 1124 of the Bankruptcy Code, a class of claims or equity interests is impaired under a plan of reorganization unless, with respect to each claim or equity interest of such class, the plan:

    (a)    leaves unaltered the legal, equitable, and contractual rights of the holder of such claim or equity interest; or

    (b)    notwithstanding any contractual provision or applicable law that entitles the holder of a claim or equity interest to demand or receive accelerated payment of such claim or equity interest after the occurrence of a default:

        (I)    cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code;

        (ii)    reinstates the maturity of such claim or interest as it existed before such default;

        (iii)    compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance on such contractual provision or such applicable law; and

        (iv)    does not otherwise alter the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest.

### Classification and Treatment of Claims and Interests

1.13    The Plan classifies Claims separately in accordance with the Bankruptcy Code and provides different treatment for different classes of Claims.

1.14      Only holders of Allowed Claims are entitled to receive distributions under the Plan. Allowed Claims are Claims that are not in dispute, are not contingent, are liquidated in amount, and are not subject to objection or estimation.  Initial distributions or other transfers of Cash or other consideration specified in the Plan otherwise available to the holders of Allowed Claims  will be made on the Effective Date, or (b) the date on which such Claim becomes an Allowed Claim), as otherwise provided in the Plan, or as may be ordered by the Bankruptcy Court.

1.15      In accordance with the Plan, unless otherwise provided in the Plan or the Confirmation Order, the treatment of any Claim under the Plan will be in full satisfaction, settlement, release, and discharge of and in exchange for each and every Claim.

### Requirements for Confirmation of the Plan

1.16    At the confirmation hearing, the Bankruptcy Court must determine whether the Bankruptcy Code's requirements for confirmation of the Plan have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan.  As set forth in section 1129 of the Bankruptcy Code, these requirements are as follows:

The plan complies with the applicable provisions of the Bankruptcy Code.

The proponents of the plan comply with the applicable provisions of the Bankruptcy Code.

The plan has been proposed in good faith and not by any means forbidden by law.

Any payment made or promised by the Debtor, by the plan proponents, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in, or in connection with, the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of the Bankruptcy Court as reasonable.

(A)      The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a joint plan with the Debtor, or a successor to the Debtor under the plan; and (B) the appointment to, or continuance in,  such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and

the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized Debtor, and the nature of any compensation for such insider.

Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the Debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.

With respect to each impaired class of claims or interests:

(I) each holder of a claim or interest of such class has (A) accepted the plan or (B) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated on such date under chapter 7 of the Bankruptcy Code on such date; or

(ii) if section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, the holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

With respect to each class of claims or interests:

(I)      such class has accepted the plan; or

(ii)     such class is not impaired under the plan.

Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that:

(I)      with respect to a claim of a kind specified in section 507(a)(1) or

507(a)(2) of the Bankruptcy Code, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(ii)     with respect to a class of claims of a kind specified in section 507(a)(3), 507(a)(4), 507(a)(5) or 507(a)(6) of the Bankruptcy Code, each holder of a claim of such class will receive: (I) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and

(iii)    with respect to a claim of a kind specified in section 507(a)(7) of the Bankruptcy Code, the holder of a claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

If a class of claims is impaired under the plan, at least one class of claims that is impaired has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim of such class.

Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

All fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on confirmation of the plan, have been paid or the plan provides for the payments of all such fees on the effective date of the plan.

The plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114, at any time prior to confirmation of the plan, for the duration of the period the Debtor has obligated itself to provide such benefits.

The Debtor believes that the Plan satisfies all the statutory requirements of chapter 11 of the Bankruptcy Code, that the Debtor has complied with or will have complied with all the requirements of chapter 11, and that the Plan is proposed in good faith.

At the Confirmation Hearing, the Bankruptcy Court will determine whether holders of Allowed Claims or Allowed Equity Interests would receive greater distributions under the Plan than they would receive in a liquidation under chapter 7.

The Debtor believes that the feasibility requirement for confirmation of the Plan is satisfied by the fact that the future operating revenues will be sufficient to satisfy the obligations under the Plan in addition to supporting sustainable growth of the enterprise. These facts and others demonstrating the confirmability of the Plan will be shown at the Confirmation Hearing.

**Cramdown**

1.17    The bankruptcy court may confirm a plan of reorganization even though fewer than all the classes of impaired claims and interests accept it. For a plan of reorganization to be confirmed despite its rejection by a class of impaired claims or interests, the proponents of the plan must show, among other things, that the plan does not "discriminate unfairly" and that the plan is "fair and equitable" with respect to each impaired class of claims or interests that has not accepted the plan.

1.18    "Fair and equitable" has different meanings with respect to the treatment of secured and unsecured claims. As set forth in section 1129(b)(2) of the Bankruptcy Code, those meanings are as follows:

With respect to a class of **secured claims**, the plan provides:

(a)  (I)  that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the Debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(ii)  that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(b)  for the sale, subject to section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (a) and (b) of this subparagraph; or

©)  the realization by such holders of the "indubitable equivalent" of such claims.

With respect to a class of **unsecured claims**, the plan provides:

(a)  that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(b)  the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

With respect to a class of **interests**, the plan provides:

(a)  that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled or the value of such interest; or

(b)  that the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

1.19    In the event that one or more classes of impaired Claims or Equity Interests reject the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable with respect to, and does not discriminate unfairly against, any rejecting impaired class of Claims. The absolute priority rule requires that prior to equity retaining an interest in the Debtor the senior classes of claims must be paid in full or vote to accept the Plan. This means that when the unsecured creditors are not being paid in full, the Debtor's shareholders or equity interest holders cannot retain their stock in the Debtor or receive any financial benefit under the Plan because such retention or receipt violates the absolute priority rule and may make the Plan non-confirmable by the Court.

For the reasons set forth above, the Debtor believes the Plan does not discriminate unfairly against, and is fair and equitable with respect to, each impaired class of Claims or Equity interests.

## II.

## REPRESENTATIONS

2.1.    [Note:  Subsequent paragraphs in brackets are to be included after the Court approves this Disclosure Statement.]

2.2.    [This Disclosure Statement is provided pursuant to Section 1125 of the **Code** to all of the **Debtor's** known **Creditors, Equity Interest Holders,** and other parties in interest in connection with the solicitation of acceptance of its **Plan** of reorganization, as amended or modified.  The purpose of this Disclosure Statement is to provide such information as will enable a hypothetical, reasonable investor, typical of the holders of **Claims,** to make an informed judgment in exercising its rights either to accept or reject the **Plan.**  A copy of the **Plan** is attached hereto as **Exhibit "1".**]

2.3.    [After a hearing on notice, the **Court** approved this Disclosure Statement as containing information of the kind and in sufficient detail adequate to enable a hypothetical, reasonable investor typical of the classes being solicited to make an informed judgment about the **Plan.**]

2.4.    The information contained in this Disclosure Statement has been derived from information submitted by the **Debtor,** unless specifically stated to be from other sources.

2.5.    All initially capitalized and bolded words used in this Disclosure Statement have the same definitions provided for in Article I of the Plan.

2.6.    No representations concerning the **Debtor** are authorized by the **Debtor** other than those set forth in this Disclosure Statement.  The **Debtor** recommends that any representation or inducement made to secure your acceptance or rejection of the **Plan** which is not contained in this Disclosure Statement should not be relied upon by you in reaching your decision on how to vote on the **Plan.**  Any representation or inducement made to you not contained herein should be reported to the attorneys for **Debtor** who shall deliver such information to the **Court** for such action as may be appropriate.

2.7.    **ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN.    ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.**

2.8.    **THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT.  FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS**

BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

2.9.    THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS AND EQUITY INTEREST HOLDERS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS, AND SHOULD BE ACCEPTED.  CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS AND EQUITY INTEREST HOLDERS VOTE FOR THE PLAN.

2.10.    DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.   THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN. THE PLAN WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT, AND EACH CREDITOR AND INTEREST HOLDER IS URGED TO CAREFULLY REVIEW THE PLAN PRIOR TO VOTING ON IT.

## III.

## FINANCIAL PICTURE OF THE DEBTOR

### Financial History and Background of the Debtor

3.1    Shores Properties, L.P. owns a country club and golf course in Rockwall, Texas.  Hillcrest Bank is the lender providing financing for the country club and golf course.  Jeff Silverstein is the principal behind the Shores Properties, L.P.

3.2    Prior to filing the bankruptcy case the Debtor was in a lawsuit with the City of Rockwall over the termination of the debtor's leasehold rights to a portion of the golf course.  The City claimed that such rights had been terminated. Debtor has acknowledged the termination of such rights. The Debtor filed Chapter 11 in order to obtain time to find a financial partner to purchase the club and course and to work an agreement with the City of Rockwall.  To date the Debtor has not been successful in finding a financial partner so at this time it is opting to surrender the property to the secured lenders that claim an interest in such property through a Plan.

### Current Operations

3.3.    Debtor's assets consist of the country club and a portion of the golf course.

### Future Income and Expenses Under the Plan

3.4.    Not applicable.

## IV.

## ANALYSIS AND VALUATION OF PROPERTY

### Real Property

4.1.    The **Debtor** owns 2600 Champion Drive, Rockwall, Texas (country club and portion of the golf course). The market value of such property is $4,039,396.00.

### Personal Property

4.2.    **Debtor** owns the personal property described in the Schedules on file in this case.

## V.

## SUMMARY OF PLAN OF REORGANIZATION

### Classification and Treatment of Claims Under the Plan

5.1.    **Unclassified Claims.** Allowed Administrative Claims.

5.2    **Classes of Claims.** A description of the claimants in each class and the treatment of their claims is set forth as follows:

| Description | Class of Claims | Projected Amount in Class |
| --- | --- | --- |
| Administrative Claims | 1 | $25,000.00 |
| Secured Tax Creditor Claims | 2 | $210,243.89 |
| Priority Tax Claims | 3 | $-0- |
| Secured Claim of Hillcrest Bank | 4 | $3,957,332.09 |
| Textron Financial | 5 | $197,061.56 |
| VGM Financial Lease | 6 | $68,890.00 |
| General Unsecured Claims | 7 | $150,000.00 (non-insiders and not disputed) |
| Equity Interest Holders | 8 | |

**Class 1 Claims.**   The Class 1 Claims will be paid once Allowed in full by the Debtor and on or before the Effective Date. These claims are priority claims pursuant to Section 507(a)(1) of the Bankruptcy Code. These claims include claims for Debtor's attorney's fees and U.S. Trustee's fees. U.S. Trustee's fees must be paid until the case is closed. The Debtor must file quarterly reports following Confirmation and until the case is closed. The Class 1 Claims may agree to a different treatment.

**Class 2 Claims**. The Class 2 Claims liens will remain attached to the property. There will be no provision for payment of such claims under this Plan. The Debtor is surrendering its interest in the property securing such liens.

The Class 2 Claims are Impaired and the holders of the Class 2 Claims are entitled to vote to accept or reject the Plan.

**Class 3 Claim**.  The Class 3 Claims will be paid once Allowed in full on the Effective Date.

The Class 3 Claims are Impaired and the holders of the Class 3 Claims are entitled to vote to accept or reject the Plan.

**Class 4 Claim**.  The Class 4 Claim will be treated once Allowed as follows:

The real and personal property securing the Allowed Secured Claim of Hillcrest  Bank shall be deeded to Hillcrest in satisfaction of its indebtedness as the indubitable equivalent of its Allowed Secured Claim on the Effective Date.

The Class 4 Claim is Impaired and the holder of the Class 4 Claim is entitled to vote to accept or reject the Plan.

**Class 5 Claim**.  The Class 5 Claim will be treated once Allowed as follows:

The personal property securing the Allowed Secured Claim of Textron Financial shall be surrendered to Textron in satisfaction of its indebtedness as the indubitable equivalent of its Allowed Secured Claim on the Effective Date.

The Class 5 Claim is Impaired and the holder of the Class 5 Claim is entitled to vote to accept or reject the Plan.

**Class 6 Claim.**  The Class 6 Claim will be treated once Allowed as follows:

The personal property securing the Allowed Secured Claim of VGM Financial Lease shall be surrendered to VGM in satisfaction of its indebtedness as the indubitable equivalent of its Allowed Secured Claim on the Effective Date.

The Class 6 Claim is Impaired and the holder of the Class 6 Claim is entitled to vote to accept or reject the Plan.

**Class 7 Claims.**  The Class 7 Claims will be treated once Allowed as follows:

The Allowed Unsecured Claims of non-insider third parties shall be paid 10% of their Allowed Claims on the Effective Date.

The Class 7 Claims are Impaired and the holder of the Class 7 Claims is entitled to vote to accept or reject the Plan.

**Class 8 Equity Interest Holders.**  The Class 8 Equity Interest Holders will be treated as

follows:

On the Confirmation Date, the equity interests shall retain their interests in exchange for a contribution in the approximate amount of $25,000 to pay the Allowed Claims called for by this Plan.

## VI.

## FEASIBILITY OF PLAN

6.1.    **Debtor** asserts that its **Plan** is feasible based on the funds to be contributed to the Plan.

### Procedure for Filing Proofs of Claims and Proofs of Interests

6.2.    All proofs of claims and proofs of interests must be filed by those **Claimants** and **Equity Interest Holder** who have not filed such instruments on or before the **Bar Date** fixed by the **Court**.

6.3.    If **Claimants** have already filed a proof of claim with the **Court** or are listed in the **Debtor's** Schedules as holding non-contingent, liquidated and undisputed claims, a proof of claim need not be filed.  The schedules and amendments thereto are on file with the **Court** and are open for inspection during regular **Court** hours.  If the equity security interest of an **Equity Interest Holder** is properly reflected in the records of the **Debtor**, a proof of interest need not be filed.

## VII.
## RETENTION OF JURISDICTION

7.1.    The Bankruptcy Court's jurisdiction shall be retained under the **Plan** as set forth in the **Plan**.

## VIII.
## ALTERNATIVES TO DEBTOR'S PLAN

If the **Debtor's Plan** is not confirmed, the **Debtor's** bankruptcy case may be converted to a case under Chapter 7 of the **Code**, in which case a trustee would be appointed to liquidate the assets of the **Debtor** for distribution to its **Creditors** in accordance with the priorities of the **Code**. Since the Debtor's asset is heavily mortgaged, the Debtor projects there would be no distribution to creditors in a Chapter 7 case because the Debtor's Plan avoids additional costs for administration of a Chapter 7 including the additional costs of a Trustee, any accountant, attorneys, or auctioneers he or she may employee.

## IX.
## RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN

9.1. **Claimants** and **Equity Interest Holders** should be aware that there are a number of substantial risks involved in consummation of the **Plan**. The **Plan** contemplates that the **Debtor's** principal will fund the Plan.

## X.
## TAX CONSEQUENCES TO THE DEBTOR

10.1    Implementation of the **Plan** may result in federal income tax consequences to holders of **Claims**, to the **Equity Interest Holder**, and to the **Debtor**. Tax consequences to a particular **Creditor** or **Equity Interest Holder** may depend on the particular circumstances or facts regarding the **Claim** of the **Creditor** or the interests of the Equity Interest Holder. **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.**

## XI.
## PENDING LITIGATION

11.1. As of the date of the filing of this Disclosure Statement the significant matters pending are as follows: Hillcrest Bank's Motion to Lift Stay.

## XII.
## SUMMARY OF SIGNIFICANT ORDERS
## ENTERED DURING THE CASE

12.1.   As of the date of the filing of this Disclosure Statement the following significant orders have been entered in this case: Order Granting Application to Employ Debtor's Counsel.

Respectfully Submitted,


JOYCE W. LINDAUER
/s/ Joyce W. Lindauer
State Bar No. 21555700
Attorneys at Law
8140 Walnut Hill Lane
Suite 301
Dallas, Texas 75231
(972) 503-4033 Telephone
(972) 503-4034 Facsimile
Attorneys for Debtor


/s/ Jeff Silverstein
For Shores Properties, LP